## THE THOMAS TURNBULL.

(District Court, E. D. Pennsylvania. February 14, 1900.)

### No. 52.

NEGLIGENCE—ACTION FOR INJURY—KNOWLEDGE OF DANGER.

As a steamship was approaching a dock, a rope ladder was let down over the side, to enable a seaman to land upon the pier and make the vessel fast, and in the hurry of the moment it was dropped in front of the opening of an exhaust pipe connected with a donkey engine. While the ship was being moored, or immediately after, libelant, a stevedore, started to climb on board to seek employment in loading the vessel, which was customary at that port, and when opposite the exhaust pipe the engine was started for some purpose, and libelant was burned by the escaping steam and water. The end of the pipe could have been seen from the pier, and libelant knew its nature and use. *Held,* that the vessel was guilty of no negligence of which libelant could complain, there being no claim that he was known to be coming on board when the engine was started, and that he must be held chargeable with knowledge of the danger, which he could have seen.

In Admiralty. This was an action for personal injuries against the steamship Thomas Turnbull.

Francis C. Adler and John F. Lewis, for libelant.
Henry R. Edmunds and Convers & Kirlin, for respondent.

McPHERSON, District Judge. This is an action to recover damages for personal injuries to the libelant, alleged to have been caused by the respondent's negligence. The facts are as follows: In the

afternoon of June 15, 1896, the steamship Thomas Turnbull was approaching an elevator on the Delaware river, in this city, where she was to take on board a cargo of grain. As she neared the dock, a rope ladder was let down over her side in order to permit a seaman to land upon the pier and make fast the mooring lines. In the hurry of the moment, the ladder was dropped over the exhaust pipe connected with one of the donkey engines. While the ship was being moored, or shortly afterwards,—the testimony concerning the time of the accident is conflicting, and I do not think it necessary to determine the point exactly,—the libelant came upon the pier, and mounted the ladder, in order to board the vessel and offer himself for employment in the work of loading. He is a stevedore by occupation, and during the morning had been employed in loading grain upon another steamship on the opposite side of the dock. That work had been finished, and he had been paid. His employer there had been a boss stevedore named Thomas Grace, and, as Grace was also under contract to load the Turnbull, the libelant hoped, and had some reason to expect, that he would be employed upon the Turnbull also. The injury was done under the following circumstances: It is the custom in the district where the vessel was to receive her cargo for stevedores in search of work to go, not only to the wharves, but also on board the vessels, where they hope to find employment. Sometimes they are hired on the wharf, and sometimes on the vessel. Whether or not the respondent knew of this custom does not clearly appear, but I do not regard her knowledge as important in the present action. For the case in hand, it may be assumed that the libelant was doing nothing improper when he attempted to board the vessel, whether she was still being docked or had been completely made fast. Probably she had been made fast, for the boss stevedore was already on board with two men, and was beginning to rig the chutes through which the grain was to be run into the hatches. But the libelant did not examine the surroundings of the ladder, and therefore did not observe that it had been let down over the exhaust pipe, although this pipe projects from the side of the vessel an inch or two, and, while probably not obtrusive, is easy to be seen. As he went up the ladder, and reached a point opposite the pipe, the donkey engine was started to perform some work, and steam and hot water were projected through the pipe, striking his breast and thigh, and doing the injury complained of. The negligence charged is not placing the ladder in a safe and proper place, and working the engine while the libelant was going on board.

I see no negligence at the time the ladder was put down. There was no reason, then, to anticipate that any one was about to come on board, and the ladder was merely intended for the temporary use of the seaman who was making fast the mooring lines to the wharf. Under such circumstances, the vessel owed the libelant no duty to exercise special care about the particular point on the ship's side where the ladder should be thrown over. If it was afterwards left in the same place for the use of any one who might desire to come on board, the question of due care in thus maintaining it might arise. But whether it was so left, or whether the injury occurred while the tempo-

rary use was manifestly the only use in contemplation, I do not find it necessary to decide. In either event, I think the libelant used the ladder at his own risk. He could easily have seen, if he had chosen to look, that the ladder was over a pipe projecting from the side of the vessel, and his testimony shows that he knew what kind of a pipe it was. He must be charged with the knowledge that he could thus easily have gained; and certainly, if he had seen the pipe and had still persisted in going on, it could not be successfully contended that he had not taken the risk of injury. There is no testimony to show that the engine was used with the knowledge that the libelant was on the ladder. The charge is negligence, and not the willful infliction of injury.

The libel must be dismissed, but without costs.

---

## THE PERU.

### (District Court, E. D. Pennsylvania. February 15, 1900.)

SALVAGE—AMOUNT—TOWAGE SERVICES.

A sailing ship valued at $60,000 was in imminent danger of being destroyed by fire, which had started in the sheds on a wharf near which the ship lay. She was on fire in several places, when a tug ran up under her bow, took a line from the ship, and towed her away immediately. There was no difficulty in towing the ship, and after the two vessels left the wharf the peril was over. The injury to the ship did not exceed $150. The value of the tug was not more than $3,500. If the tug had not been present, a fire boat would have performed the services. The tug was at no time in danger. *Held*, that $2,500 should be awarded the tug as salvage.[1]

In Admiralty.

Horace L. Cheyney and John F. Lewis, for libelant.
Edward F. Pugh and Henry Flanders, for claimant.